# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

ERNIE AHMAD,

    Plaintiff,                        CASE NO. 08-CV-10454

v.                                     DISTRICT JUDGE THOMAS LUDINGTON
                                     MAGISTRATE JUDGE CHARLES BINDER

KMART, SEARS,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt. 12)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED** and the case be dismissed with prejudice.

## II. REPORT

### A. Introduction

By order of United States District Judge Thomas Ludington, this employment case alleging racial discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, was referred to the undersigned magistrate judge for general case management on February 8, 2008. (Dkt. 4.) On August 7, 2008, Defendants Kmart and Sears (hereafter collectively referred to as "Defendant") filed the instant motion for summary judgment. Plaintiff responded (Dkt. 15), and Defendant replied (Dkt. 16). Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the motion is ready for Report and Recommendation without oral argument.

### B. Background Facts and Parties' Arguments

Plaintiff Ernie Ahmad, a black male, worked for Defendant as a "stocker" in its Kmart store in Saginaw, Michigan, from November 25, 2006, until his termination on April 15, 2007. (Dkt. 12 at Ex. H; Dkt. 15 at 20.)

Defendant's employment policy provided that it would not hire persons who have been convicted of violent crimes or theft crimes in the past seven years. As a result of Plaintiff's domestic violence conviction in 2003, Plaintiff was originally designated a "no hire." However, a miscommunication led to him being erroneously hired. (Dkt. 12 at 9-10; Bacon Aff., Dkt. 12 at Ex. B.) This error came to light in March 2006. (Dkt. 12 at 10.) As a result, Defendant initiated an investigation into the circumstances of Plaintiff's past conviction and asked Plaintiff to submit a statement of his version of the events and a copy of the police report. (Dkt. 12 at 10; Carlson Aff., Dkt. 12 at Ex. E.) Defendant states that Plaintiff's Supervisor, Thomas Carlson, made it clear to Plaintiff that continued employment depended on submission of the required documents. (Dkt. 12 at 10, Carlson Aff. at Ex. E.) Since he submitted only his version of the events and did not submit the police report, he was suspended with pay pending an investigation. (*Id.*) Defendant alleges that despite being requested to do so, Plaintiff "either failed or refused to provide a copy of the police report" and was therefore "terminated based on his failure to comply with Defendant's internal procedures." (Dkt. 12 at 10; *see also* Carlson Aff., Ex. E; Bacon e-mail to Carlson, Ex. F; and termination letter, Ex. H.)

Plaintiff contends that the notice he received gave him the option of submitting a "statement 'or' any documentation on the incident," as evidenced in an e-mail from Sharon Bacon to Thomas Carlson. (Dkt. 15 at 2, 10 (copy of e-mail).) Plaintiff further contends that he complied with the request by submitting a statement that inquired about requesting a police report but that he "did not have enough time to retrieve the information," and that, "even if [he] would have retrieved the

report they would have discharged [him] anyway [because] they knew the time frame they gave [him] was not enough time . . . ." (Dkt. 15 at 2-3.)

Defendant agrees that even if it had received the police report on time, the fact that the Plaintiff's statements contradict those made by the victim and due to the "violent nature of the crime, there is no question that Defendant would have terminated Plaintiff regardless." (Dkt. 12 at 10; Bacon Aff. at Ex. B.) Defendant further explains that "there were *no* mitigating factors in Plaintiff's domestic violation conviction that would have permitted his continued employment" in light of Defendant's policy not to employ violent offenders absent mitigating circumstances. (Dkt. 12 at 10 (emphasis in original); Bacon Aff. at Ex. B.)

Plaintiff continues to disagree with the statements contained in the police report, noting that "in the report the witness stated that I hit my daughter with 2 hands to the face [and] slammed my daughter and then with my fist hit her several times. My daughter stated I slammed her and hit her several times, not 2 right hands then slammed her and hit her several times to the face." (Dkt. 15 at 4.) Plaintiff further disagrees with the report because:

> it states that I hit my daughter with my fist closed handed several times yet there was no swelling of the face[,] no blood from the nose [and] no black eye. It states that I kneeled upon her chest[;] yes, my daughter had me by the testicles [so] I had no choice and if the courts would retrieve the actual court transcripts from this trial you will find that in the beginning the witness did not know what was going on[.] [I]t appeared as though I punched my daughter, [but] I was keeping her from attacking me and my daughter admits that her story was untrue.

(Dkt. 15 at 5.) The portion of the story that Plaintiff points to as untrue was his daughter's statement that Plaintiff broke her tooth in the scuffle when she actually broke her tooth two years prior to Plaintiff taking custody over her. (Dkt. 15 at 13 (letter from Plaintiff to Bacon).)

Plaintiff alleges that he was treated differently from at least one similarly-situated white woman, M.M., who also had a misdemeanor conviction but who was not terminated.[1] (Dkt. 15 at 3-4, 6.) M.M. admitted to having a misdemeanor conviction for "lying to the police for filing a false police report . . . in late 2005 or early 2006 [and that Defendant] never asked her for verification of her arrest or conviction." (Dkt. 15 at 19 (McClosky witness statement made to Equal Employment Opportunity Commission("EEOC")).)[2] Defendant contends that it was "unaware of any criminal convictions in [M.M.'s] past" because she did not disclose any conviction on her application and that searches "conducted in November of 2006, prior to Plaintiff's discharge, showed no criminal activity." (Dkt. 12 at 12, Ex. M (M.M. job application); N (search results).)

Plaintiff asserts that Defendant treated him differently from M.M. on account of race or "color." (Dkt. 15 at 4.) Plaintiff contends that Mrs. Bacon's statement in her e-mail to Mr. Carlson that she "[was] surprised that [the police report] listed [the conviction] as domestic violence and not child abuse" was "a racial statement at my race because she knows that child abuse is a felony and even though blacks are a small part of the nation we make up the greater part of felony charges, yet all blacks are not criminals[;] she is not a judge to make a statement as such." (Dkt. 15 at 2.)

### C. Applicable Standard of Review and Governing Law

---

[1] Plaintiff has not alleged that a company policy had a discriminatory effect that was not justified by the needs of Defendant's business, i.e., a "disparate impact" case. Had he done so, it would appear that the business necessity defense could arguably apply to Defendant's criminal conviction policy since it appears to distinguish between applicants that pose an unacceptable level of risk and those that do not. *See El v. Southeastern Pennsylvania Transp. Authority (SEPTA)*, 479 F.3d 232, 243-45 (3rd Cir. 2007).

[2] Although Defendant also addresses a male employee, R.B., as a proposed comparator, Plaintiff only mentions him once in passing and does not focus on him. (*See* Dkt. 12 at 5.) Defendant notes that R.B. was hired before Defendant instituted its policy regarding background checks and the EEOC determined R.B. was not comparable based on this fact. (Dkt. 12 at 11; Dkt. 15 at 22 (EEOC).) To the extent that Plaintiff has proposed R.B. as a comparator, I suggest he is not an appropriate one since he was not subject to the same policy.

### 1. Rule 56(c) Motion for Summary Judgment

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent

to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

2.  **Title VII Employment Discrimination Claims**

Title VII, 42 U.S.C. § 2000 *et seq.*, prohibits employers from discharging or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). Absent direct evidence of racial discrimination, the plaintiff bears the initial burden of production under the *McDonnell Douglas* burden-shifting scheme, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to show a prima facie case of discrimination. *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

The elements of a prima facie case under Title VII are: (1) plaintiff is a member of a protected class, (2) he was subject to an adverse employment action, (3) he was qualified for the position at issue, and (4) he was replaced by someone outside of the protected class or a similarly-situated person outside of the protected class was treated more favorably. *Wright v. Murray Guard, Inc.* 455 F.3d 702, 707 (6th Cir. 2006); *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 728 (6th Cir. 2004).

If a plaintiff meets this initial burden, this "creates a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged [] action." *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). If the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to "prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.*

The salient issue in a Title VII claim of discrimination is whether the plaintiff was singled out because of his membership in a protected class and treated less favorably than those outside the class, not whether the plaintiff was treated less favorably than "someone's general standard of equitable treatment." *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988) (citations omitted).

### D. Analysis and Conclusions

#### 1. Prima Facie Case

The first three elements of Plaintiff's prima facie case are not contested. Therefore, the Court presumes that Plaintiff is a member of a protected class, that he was terminated and that he was qualified for the position.

The fourth element, that he was treated differently than a similarly-situated person outside of his protected class, is disputed. (Dkt. 12 at 12.) To satisfy this requirement, a plaintiff must show that the suggested comparable employee is similar in "all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citations omitted) (emphasis in original). The relevant aspects include whether the plaintiff and the comparable employee: (1) share the same supervisor; (2) are subject to the same standards; and (3) have engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citations omitted). The

plaintiff and the proposed comparators must have engaged in acts of "comparable seriousness." *Wright,* 455 F.3d at 710.

Neither party has discussed or proffered evidence of whether the decisionmakers were the same or different, although it can be inferred that the same individuals were involved in both M.M.'s and Plaintiff's background investigations. The same policy was applied to both M.M. and Plaintiff. Therefore, the contested factor is whether M.M. and Plaintiff engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," i.e., whether the actions were of comparable seriousness. *Ercegovich*, 154 F.3d at 352; *Wright,* 455 F.3d at 710. Defendant contends that it was "unaware of any criminal convictions in [M.M.'s] past" because she did not disclose any conviction on her application and that searches "conducted in November of 2006, prior to Plaintiff's discharge, showed no criminal activity." (Dkt. 12 at 12, Ex. M (M.M. job application); N (search results).) Plaintiff has not rebutted that assertion with any evidence to the contrary. Therefore, I suggest that Plaintiff cannot establish a *prima facie* case of discrimination.

Even assuming, *arguendo*, that Plaintiff could show that M.M. also revealed that she had a past conviction for falsifying a police report, I suggest the result would be the same. If the severity of the employee's conduct is examined, Plaintiff was convicted of a crime of violence; M.M. was not convicted of a violent offense (or theft offense) that would cause an employee to be considered ineligible for employment with Defendant. Therefore, I suggest that even if Defendant had known about M.M.'s conviction, M.M. could not be considered comparable and Plaintiff could not establish a *prima facie* case. *See Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 562 (6th Cir. 2004) (finding that although co-workers were similar in some respects, they could not be considered comparable where they had not engaged in threatening or violent behavior as Plaintiff had).

## 2. Legitimate Nondiscriminatory Reason

Assuming, *arguendo,* that Plaintiff met his burden of establishing a prima facie case, the burden of production shifts to Defendant to come forward with a legitimate nondiscriminatory reason for the adverse employment action. *Carter*, 349 F.3d at 273. In this case, Plaintiff does not contest the fact that Defendant has articulated a legitimate nondiscriminatory reason for his termination, i.e., his failure to submit the police report regarding the conviction and the past domestic violence conviction itself. Accordingly, the burden of production then shifts back to Plaintiff to "prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.*

## 3. Pretext

A proffered reason is pretextual if it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). *See also Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 545 (6th Cir. 2008); *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). In order to show there was no basis in fact for the decision made, "a Plaintiff must put forth 'evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false.'" *Abdulnour v. Campbell Soup Supply Co. LLC*, 502 F.3d 496, 502-03 (6th Cir. 2007) (citations omitted) (granting summary judgment where "Plaintiff fails to provide evidence that these complaints were false, inaccurate, or not made"). In order to show that Defendant's proffered reason did not actually motivate Defendant's challenged conduct, "Plaintiff must show 'that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.'" *Id.* at 503 (citations omitted). "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will

be to expose as a pretext, if indeed it is one." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) (quoted with approval in *White v. Baxter Healthcare*, 533 F.3d 381, 394 (6th Cir. 2008) (finding that plaintiff's "superior qualifications" coupled with the employer's "subjective" proffered perceptions of plaintiff as "aggressive" and "lacking in management vision" were sufficient evidence of pretext to survive summary judgment)). "Pretext, however, cannot be shown by attacking the decision itself." *Hein v. All American Plywood Co., Inc.*, 232 F.3d 482, 490 (6th Cir. 2000).

Guided by these cases, I suggest that Plaintiff cannot demonstrate that Defendant's reasons did not "actually motivate" Defendant. Plaintiff has not come forward with any evidence to show that discrimination makes it "more likely than not" that the employer's explanation is a pretext. *Id.* at 503. Nor has Plaintiff shown how Defendant's decision was so "idiosyncratic" or "questionable" that only pretext could explain an otherwise obtuse decision. *Loeb*, 600 F.2d at 1012.

Plaintiff's proffered statement by Mrs. Bacon does not, I suggest, show a racial motivation at all. She simply expressed curiosity in the prosecutor's decision to charge domestic violence rather than child abuse since the violence was directed at Plaintiff's daughter. (Dkt. 12, Ex. F (she "[was] surprised that [the police report] listed [the conviction] as domestic violence and not child abuse").) Instead, I find Plaintiff's extrapolation from that statement to be racially biased but in a manner completely detached from the statement made by Mrs. Bacon. (Dkt. 15 at 2 ("she knows that child abuse is a felony and even though blacks are a small part of the nation we make up the greater part of felony charges, yet all blacks are not criminals she is not a judge to make a statement as such.")

I therefore suggest that even if Plaintiff could establish a prima facie case, since there is no evidence tending to show that Defendant's proffered reason was a pretext for discrimination,

Defendant's motion for summary judgment should be granted and the case dismissed with prejudice.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                  s/ *Charles E. Binder*
                                                  CHARLES E. BINDER
Dated: October 2, 2008                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Barbara E. Buchanan, Terrence J. Miglio, Gouri G. Sashital, and served on Ernie Ahmad, 1432 Howard St., Saginaw, MI 48601, via first class mail, and served on District Judge Ludington in the traditional manner.

Date: October 2, 2008        By     s/Patricia T. Morris
                                                 Law Clerk to Magistrate Judge Binder